## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JESUS HERNANDEZ | : | MOTION TO VACATE |
| RODRIGUEZ, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:17-CR-157-CAP-JSA |
| | : | |
| UNITED STATES, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:18-CV-4800-CAP-JSA |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant Jesus Hernandez Rodriguez has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255. (Doc. 41). Movant seeks to challenge the constitutionality of his conviction and sentence following his guilty plea in the Northern District of Georgia.

I. Procedural and Factual History

On February 28, 2017, Georgia State Patrol Trooper Doug Allen conducted a traffic stop on a Kia Sorrento Movant was driving in East Point, Georgia. (Doc. 24, Presentence Investigation Report ("PSR") ¶7).[1] Trooper Allen approached the vehicle, asked Movant for his license, and noticed that Movant's hand was trembling when he handed his license to Trooper Allen. (*Id.*). Trooper Allen asked Movant

---

[1] It is not clear from the record what traffic law Movant violated, but Movant indicates the purported reason for the traffic stop was for Movant's failure to maintain his lane. (*See* Doc. 25 at 2).

whether the Kia he was driving belonged to him and Movant responded that it was

owned by a friend, but he could not provide the friend's name.  (*Id.*).  Trooper Allen

asked Movant where he was going and he responded that he was in the area to see

his mother.  (PSR ¶8).  After Trooper Allen prepared a written warning to Movant

for the traffic offense, he then asked Movant if Movant was transporting anything

illegal in the Kia.[2]  (*Id.*).  Movant responded that there was nothing illegal in the car;

---

[2]    The Government mostly cites to the PSR as support for the facts set forth in its brief.  However, the PSR does not contain some of those asserted facts.  For example, the Government asserts that Movant told Trooper Allen that he was in the area to see his mother, but he could not provide his mother's address.  (Doc. 45 at 3).  The Government cites to PSR ¶8 as support for those facts; however, PSR ¶8 only states that Movant told Trooper Allen that he was in the area to see his mother – it says nothing about the fact that Movant could not provide his mother's address. (PSR ¶8).

Another example is where the Government again cites to PSR ¶8 when asserting that Movant verbally consented to Trooper Allen's request to search the vehicle and then signed a Spanish language consent to search form.  (Doc. 45 at 4). The only fact contained in PSR ¶8, however, is that Movant consented to the search. (PSR ¶8).  Again, nowhere in that paragraph does it state that Movant "verbally agreed to the search and signed a Spanish language consent to search form."

Finally, the Government states that before signing the form Movant told Trooper Allen that he completed the sixth grade and could read Spanish.  (Doc. 45 at 4).  The Government does not cite to the record for this fact, and it is not clear from where this fact came.

While it may be that the Government is privy to facts not in the record, the undersigned can only rely on the record to substantiate any such fact.  As a result, in discussing the facts in this section, the undersigned will provide only facts that are actually contained in the record.

however, based on Movant's nervousness and evasive answers to his questions, Trooper Allen asked for, and received, Movant's consent to search the car. (*Id.*). When Trooper Allen folded down the back seat of the Kia, he observed green cellophane sticking out from an area under the seat and discovered in a hidden "aftermarket compartment" thirty-four bundles, which equaled 33.9 kilograms, of cocaine. (PSR ¶9). Trooper Allen placed Movant under arrest and charged him with violating the Georgia Controlled Substances Act. (PSR ¶10).

Trooper Allen transported Movant to the East Point Police Department where law enforcement officers interviewed him after he waived his *Miranda* rights. (*Id.*; Doc. 34 ("Plea Tr.") at 15). During the interview Movant told investigators that he was supposed to be paid $2000.00 by someone known to him only as "Tex" to drive packages in the Kia from a location on Sylvan Road in East Point to an East Point Walmart a few miles away located at Cleveland Avenue and Sylvan Road. (PSR ¶10; Plea Tr. at 15). Movant also told investigators that he had picked up the Kia at a business on Sylvan Road after a man he knew as "Gordo" met him at the Walmart and drove him there. (PSR ¶10; Plea Tr. at 15). During that interview Movant admitted to agents that he had a warehouse where he stored flooring and other building materials, and that he had been renting the warehouse for a few years and occasionally slept there. (PSR ¶11). Movant identified the key on his keychain that would unlock the warehouse and consented to a search thereof. (*Id.*).

3

Later that day, investigators conducted a search of Movant's warehouse and seized:  a money counter found inside a large pottery vase; $208,970.00 inside a blow-up mattress box; 100.4 grams of marijuana inside a plastic container hidden between several pallets; liquid and crystalized methamphetamine from inside a small plastic container, also hidden between several pallets; methamphetamine from inside a plastic container; eleven foil-wrapped objects containing methamphetamine; and two plastic bags containing 973.3 grams of cocaine found against a wall behind several stacked pallets.  (PSR ¶12).  The total amount of methamphetamine seized from the warehouse equaled 7.1476 kilograms.  (*Id.* ¶13).

A federal grand jury in the Northern District of Georgia indicted Movant on one count of possessing with the intent to distribute at least five (5) kilograms of cocaine in connection with the drugs found in the car.  (Doc. 2).  Notably, Movant was not charged with the drugs found at the warehouse.  (*Id.*; *see also* Doc. 45 at 13).  On June 27, 2017, Movant entered a guilty plea to the indictment pursuant to a plea agreement.  (Docs. 14, 14-1 ("Plea Agreement"), 34).  Therein, Movant and the Government agreed that Movant should be held accountable for 90,000 kilograms or more of marijuana equivalency and receive a two-level upward adjustment pursuant to U.S.S.G. §2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance.  (Plea Agreement ¶13).  The plea agreement also contained a one-level downward variance predicated on

Movant's expeditiously entering a plea. (*Id.* ¶18). The Government also agreed to recommend a sentence below the adjusted guideline range after that one-level downward variance. (*Id.* ¶19).

Movant agreed that the recommendations, stipulations, and guideline computations were not binding on the Court [*Id.* ¶25] and the plea agreement contained an appellate and collateral waiver on any ground except for claims of ineffective assistance of counsel [*Id.* ¶26]. During the plea colloquy and in the plea agreement Movant affirmed that he had read the agreement in its entirety, "carefully reviewed every part of it" with his attorney, understood the terms and conditions in the agreement and voluntarily agreed to them, and was fully satisfied with his counsel's representation. (*Id.* at 13; *see generally* Plea Tr. ).

Also during the plea colloquy, Movant stated under oath that: he understood the constitutional rights he was waiving by pleading guilty; he understood the charges to which he was entering his guilty plea and the consequences thereof, including a potential maximum penalty of life imprisonment; he agreed with the Government's description of the terms of the plea agreement; his decision to plead guilty was not the product of threats, force, or promises other than those contained in the agreement; he had sufficient time to discuss the charges and his case with counsel and he was satisfied with counsel's representation; he had conferred with counsel about how the sentencing guidelines might apply in his case; he understood

that the guidelines were only advisory; he understood that it was not possible to determine the exact guidelines for his case until after the PSR was completed; and he understood that the Court had authority to impose a sentence more or less severe than the guidelines range. (Plea Tr. at 5-9, 14, 16-21).

The Court emphasized that it might not accept the plea agreement's recommendations but that Movant would still be bound by his guilty plea, which Movant indicated he also understood. (*Id.* at 21). And Movant confirmed his understanding that he was waiving his right to appeal or collaterally attack his conviction and sentence except for those circumstances outlined in the plea agreement. (*Id.* at 19-20).

After the Government recited the factual basis for the plea, Movant did not disagree with that synopsis, and affirmed that he was, in fact, guilty of the offense in the indictment, and repeated his post-arrest statement that he expected to be paid $2000.00 to move the car from one spot to another. (*Id.* at 14-17). The Court found that Movant was competent to understand the proceedings, and that his decision to plead guilty was free of coercive influence of any kind with full knowledge of the charges against him and the consequences of his plea. (*Id.* at 22).

The PSR used the 2016 Guidelines Manual to determine Movant's offense level and recommended a base offense level of 38 based on the drug quantity attributable to Movant (*i.e.,* more than 90,000 kilograms of marijuana equivalency),

the amount to which Movant and the Government had agreed. (PSR ¶¶16-17; Plea

Agreement ¶13). As also agreed by the parties, the PSR recommended that Movant

receive a two-level upward adjustment pursuant to U.S.S.G. §2D1.1(b)(12) for

maintaining a premises for manufacturing or distributing a controlled substance.

(PSR ¶18; Plea Agreement ¶13). Finally, the Government agreed to recommend a

sentence between 168 and 210 months if Movant did not qualify for a safety valve

reduction.[3] (Plea Agreement ¶19).

Movant's attorney originally reserved an objection to the PSR's finding that

Movant had not met all of the criteria for receiving a safety valve reduction, but later

agreed to that finding. (PSR ¶19; Sent. Tr. at 3-5). With a three-level reduction for

Movant's acceptance of responsibility and a one-level variance for Movant's

---

[3]     The "safety valve" provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 permit the imposition of a sentence lower than the statutory minimum when five factors are satisfied. The fifth factor is at issue in this case, which requires a defendant to show that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.] . . ." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). "This final factor is a 'tell-all' provision: to meet its requirements, the defendant has an affirmative responsibility to 'truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct.'" *United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004) (per curiam) (citations omitted). "A defendant has the burden of proving his eligibility for relief under § 5C.1." *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997). The Government found that Movant had not demonstrated that he complied with this fifth factor and thus did not qualify for a safety valve reduction.

expeditious entry of a guilty plea, Movant's guideline range was between 188 and 235 months. (Sent. Tr. at 6).

Movant asked for a lower-than-guideline-range sentence of 120 months. (*Id.*at 11). Pursuant to its agreement of what sentence it would recommend if Movant did not qualify for a safety valve reduction, the Government recommended a below-guidelines sentence of 168 months. (Sent. Tr. at 13). On October 18, 2017, Senior U.S. District Judge Charles A. Pannell, Jr. sentenced Movant to the recommended 168 below-guidelines sentence, but noted that from all of the facts in the case he found no reason to go below that amount or to vary any further from the guidelines. (*Id.* at 25; Doc. 19).

Through new counsel, Movant filed a notice of appeal on October 31, 2017. (Doc. 20). On November 6, 2017, Movant also filed a motion for new trial [Doc. 25] and a §2255 motion to vacate [Doc. 26]. In the motion for new trial Movant argued that plea counsel was ineffective for: (1) failing to investigate Movant's inability to read and understand English and Spanish, and the resulting inability to properly understand the *Miranda* warnings or provide informed consent to search his vehicle or the warehouse; and (2) file a motion to suppress the evidence obtained as a result of a pretextual traffic stop and Movant's invalid consent. (Doc. 25). The §2255 motion essentially raised the same claims. (Doc. 26).

The Court entered an order on November 8, 2017, which denied both the motion for new trial and the §2255 motion. (Doc. 27). Specifically, the Court found that Movant's motion for new trial was untimely, and, in any event, it failed on the merits since his guilty plea foreclosed the pre-plea constitutional claims. (*Id.* at 3-4). The Court dismissed the §2255 motion without prejudice, however, since the Court lacked jurisdiction to review the motion while Movant's appeal was pending and Movant had not demonstrated extraordinary circumstances by which the Court could consider the motion. (*Id.* at 4-5). On March 5, 2018, Movant voluntarily dismissed his appeal. (Doc. 40).

On October 15, 2018, Movant filed the instant §2255 motion to vacate, raising the same two claims as in his motion for new trial and first §2255, that is, that (1) counsel was ineffective for failing to investigate Movant's inability to read and understand English and Spanish, and the resulting inability to properly understand the *Miranda* warnings or provide informed consent to search his vehicle or the warehouse; and (2) file a motion to suppress the evidence obtained as a result of a pretextual traffic stop and Movant's invalid consent. Movant also added two new claims, that: (3) counsel was ineffective for failing to object to the evidence seized as a result of the search of the warehouse and attributed to Movant at sentencing because Movant's consent was invalid; and (4) the Government engaged in

prosecutorial misconduct by failing to provide a Spanish translator during Movant's post-arrest interrogation. (Doc. 41).

The Government argues that Movant's §2255 motion should be denied. For the following reasons, the undersigned **RECOMMENDS** that the instant §2255 motion be **DENIED**.

II.   <u>Standard of Review</u>

Congress enacted §2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to §2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present

"exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." As discussed below, Movant's §2255 motion and the record in this case conclusively show that Movant is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

III.    Analysis

    A.    Movant's First Two Ineffective Assistance Claims Are Barred By The
          Law-Of-The-Case Doctrine.

Under the law-of-the-case doctrine, "courts are 'bound by findings of fact and conclusions of law' previously made in the same case unless '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" *United States v. Victores*, 402 F. App'x 465, 466-67 (11th Cir. 2010) (quoting *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996)). *See also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) ("'As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (citations omitted) (alteration in original).  This doctrine applies where, as here, a

11

decision is made by the district court and that decision is not challenged on appeal. *See United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) ("Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.").

The Court already denied Movant's first two claims of ineffective assistance of counsel in the order denying Movant's motion for new trial, and Movant has not shown that any of the exceptions to the law of the case doctrine apply. (Doc. 27). Movant's first two claims, therefore, are barred. *Cf. Victores*, 402 F. App'x at 467 (finding law of the case doctrine barred the defendant's second §3582(c)(2) motion where the district court had denied a first §3582(c)(2) motion and the defendant did not appeal that decision); *Harris v. Corrections Corp. of America*, 332 F. App'x 593, 595 (11th Cir. 2009) (finding law of the case doctrine barred a second Rule 60(b) motion arguing that the defendant's post-trial motion for a judgment as a matter of law was untimely, where the court had previously found that the same post-trial motion was timely); *United States v. Mers*, No. 1:01-CR-101, 2005 WL 354665, at *8 (W.D. Mich. Dec. 16, 2005) (finding ineffective assistance claim rejected by the courts in the defendant's motion for new trial and on appeal was barred by the law of the case).

B.     Movant Cannot Prevail On His Third Claim For Relief.

1.     Ground Three Is Waived By Movant's Guilty Plea.

Movant's third ground for relief – that counsel was ineffective for failing to challenge his consent to search the warehouse and move to suppress the evidence seized therefrom, is waived for the same reasons the Court held that Movant waived his first two claims of pre-plea ineffective assistance of counsel.  Indeed, "a §2255 movant who entered a valid guilty plea waives any pre-plea ineffective assistance claims that do not concern his decision to enter the plea." *Baird v. United States*, 445 F. App'x 252, 254 (11th Cir. 2011); *accord Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992).  As a result, Movant has waived his pre-plea constitutional claim that counsel was ineffective for failing to challenge Movant's consent to search the warehouse and/or for failing to file a motion to suppress any evidence seized from that search.  *See, e.g., Edwards v. United States*, No. 17-10322-D, 2018 WL 3586866, at *1 (11th Cir. June 4, 2018) ("By pleading guilty, a defendant waives any ineffective assistance of counsel claim as it involved pre-plea issues."); *Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824 (11th Cir. 2015) (holding claim that counsel failed to file a motion to suppress is waived by guilty plea because he did not claim that his plea was involuntary).[4]

_____

[4]     Notably, Movant does not claim that his plea was involuntary, and any such argument would be belied by the record.

2.    Counsel Was Not Ineffective For Failing To Argue At Sentencing Against The §2D1.1(b)(12) Two-Level Increase.

To the degree that this Court could construe Movant's third claim as one that counsel was ineffective at sentencing for failing to challenge the two-level increase based on the evidence seized at the warehouse, that claim also fails. The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018). *See also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect

14

it is apparent that counsel chose the wrong course.").  An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'"  *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds."  *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992).  *See also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process[,]" *id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).  *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail.").

Insofar as Movant attempts to argue that counsel was ineffective at sentencing for failing to challenge the two-level increase based on the evidence seized at the warehouse, the record is clear that Movant specifically agreed that the Government would seek a §2D1.1(b)(12) adjustment.  (Plea Agreement ¶13(c)).  The Court thus cannot surmise how counsel could have been ineffective for failing to breach the terms of the plea agreement.

Moreover, Movant has not demonstrated that he was prejudiced thereby. Indeed, had counsel argued against the two-level increase, the Government could have withdrawn the plea agreement, added a charge to the indictment based on all of the drugs found at the warehouse, and then proceeded to trial on both counts – all of which would have significantly increased Movant's sentence exposure.  Nor would Movant have received the maximum reduction for acceptance of responsibility and for expeditiously entering into a plea, and the Government most likely would not have advocated for leniency from the Court resulting in a below-guideline range sentence.  Any such claim, therefore, is without merit.

C.   <u>Ground Four Is Barred.</u>

1.   <u>The Collateral Waiver Prohibits Movant From Raising His Prosecutorial Misconduct Claim.</u>

In Ground Four, Movant alleges that the officers and agents who interviewed him both during the traffic stop and when he was in custody engaged in prosecutorial misconduct because they failed to provide a Spanish translator to explain the consent

16

and waiver of rights forms to him.  The collateral waiver, however, prohibits Movant from raising this claim.

Indeed, the collateral waiver states that Movant "voluntarily and expressly waives the right to . . . collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. §2255) on any ground[.]" (Plea Agreement ¶26).  In order to uphold a waiver of appeal or collateral attack, the Government need only demonstrate that "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver . . . or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993).  The waiver was in the plea agreement that Movant signed and indicated he had reviewed with his attorney, during the plea colloquy the Court specifically ensured that Movant understood the full significance of the waiver, and the record is unmistakably clear that Movant's waiver of appeal and collateral attack was knowing and voluntary.  (Plea Agreement ¶26; Plea Tr. at 12-14, 19-22).  Consequently, the waiver is enforceable, and it bars Movant's prosecutorial misconduct claim.  *See Williams v. United States*, 396 F.3d 1340, 1341-42 (11th Cir. 2005).

2.    <u>Movant's Prosecutorial Claim Is Procedurally Defaulted.</u>

Movant's prosecutorial misconduct claim also is procedurally defaulted.  "A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not do so."  *Hill v. United States*, 569 F. App'x 646, 647 (11th Cir. 2014).  *See also Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004) ("Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a 28 U.S.C. §2255 challenge").  The movant can "avoid the procedural bar by establishing that either of the following exceptions applies:  (1) cause and prejudice, or (2) a miscarriage of justice based on actual innocence."  *Hill*, 569 F. App'x at 648.  "[T]o show cause for procedural default, [a §2255 movant] must show that some objective factor external to the defense prevented [the movant] or [her] counsel from raising [the] claims on direct appeal and that this factor cannot be fairly attributable to [the movant's] own conduct."  *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam).  "Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to [the movant's] actual and substantial disadvantage[.]"  *Ward v. Hall*, 592 F.3d 1144, 1179 (11th Cir. 2010).  To demonstrate a miscarriage of justice based on actual innocence, the movant must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Lynn*, 365 F.3d at 1234-35 (internal

quotation marks and citations omitted).   A movant claiming that he is actually innocent must show factual innocence rather than legal innocence.   *Rozelle v. Secretary, Fla. Dep't of Corr.*, 672 F.3d 1000, 1012-15 (11th Cir. 2012).

Movant never raised his prosecutorial misconduct claim on direct appeal, he appears to abandon the claim in his reply, and he has not shown cause, prejudice, or that he is actually innocent to excuse the procedural default of this issue.  As a result, Movant is not entitled to relief in connection with Ground Four.

## IV.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Jesus Hernandez Rodriguez's motion to vacate his sentence [Doc. 41] be **DENIED WITH PREJUDICE**.

## V.   Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant

19

must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant's claims are barred by the law of the case, the guilty plea, the collateral waiver, and/or the procedural default doctrine. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 28th day of February, 2020.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

20